IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0267-WS-N |
| | ) |
| GEORGE S. BRASWELL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Leave to File Second Amended Complaint (doc. 66). Defendants have filed an Objection (doc. 70), to which plaintiff has submitted a Reply (doc. 72).

**I.    Background.**

Plaintiff, SE Property Holdings, LLC ("SEPH"), brought this fraudulent transfer action against defendants, George S. Braswell and Vennie T. Braswell, by filing the Complaint on May 17, 2013. According to the First Amended Complaint (doc. 22), which has been the operative pleading since September 2013, defendant George Braswell ("Mr. Braswell") is indebted to SEPH pursuant to certain defaulted loans as to which Mr. Braswell executed guaranties, then refused to fulfill his repayment obligations when demand was made. The First Amended Complaint alleges that Mr. Braswell fraudulently transferred certain assets to his wife, defendant Vennie Braswell ("Ms. Braswell"), in May 2009. The purportedly fraudulently transferred assets include the Braswells' primary residence and a beach condominium unit. Well-pleaded facts reflect that, at the time of the subject transfers, Mr. Braswell was indebted to SEPH's predecessor in the principal amount of $1,155,000, and had been sued by SEPH's predecessor for failing to pay pursuant to those guaranties. It is further alleged that Mr. Braswell's indebtedness to SEPH's predecessor later swelled by an additional $900,000 based on further defaults. On that basis, SEPH sued the Braswells on theories of actual fraudulent transfer, in

violation of Alabama Code § 8-9A-4(a); constructive fraudulent transfer, in violation of Alabama Code §§ 8-9A-4(c) and 8-9A-5(a); and conspiracy.

The original Rule 16(b) Scheduling Order (doc. 25) entered by Magistrate Judge Nelson on October 2, 2013 fixed pretrial and trial deadlines to govern the conduct of these proceedings. Paragraph 5 of the Scheduling Order provided as follows: "<u>AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES.</u>  Any motions for leave to join additional parties or amend the pleadings are due no later than **November 4, 2013**." (Doc. 25, ¶ 5.)[1]  Although multiple revisions to the Scheduling Order were made, at no time before or after November 4, 2013 did the Magistrate Judge ever relax or extend that deadline.[2]  Thus, irrespective of what may have transpired later, the court-ordered deadline for amending the pleadings lapsed on November 4, 2013.

To be sure, these proceedings departed substantially from the standard litigation track following expiration of the November 4 deadline.  On June 20, 2014, after several months of discovery and just weeks before the discovery cutoff date, the parties jointly moved for a stay of this case pending disposition of related litigation (the "*Sundance* Case"). (*See* doc. 45.) Recognizing that resolution of the *Sundance* Case could narrow or potentially even moot the issues joined in this case, the undersigned granted the joint motion to stay via Order (doc. 49) entered on July 3, 2014.  The case remained in suspended animation until August 12, 2015, at which time the stay was lifted because the *Sundance* Case had been resolved, apparently without realizing the hoped-for efficiency benefits for this action. (*See* doc. 51.)  The parties submitted multiple iterations of a supplemental Rule 26(f) report (docs. 55, 58); however, because of an oversight, no Amended Scheduling Order was entered until almost a year later, on July 13, 2016. (*See* doc. 69.)

---

[1]   Although that deadline was barely one month after entry of the Scheduling Order, the file confirms that Judge Nelson set it in that manner to effectuate the parties' stated wishes. Indeed, the Report of Parties' Planning Meeting stated, "The parties request until November 4, 2013 to join additional parties and amend the pleadings." (Doc. 20, ¶ 6.)

[2]   To the contrary, when the Magistrate Judge amended the Rule 16(b) Scheduling Order on February 14, 2014, she wrote, "Any motions for leave to join additional parties or amend the pleadings were due to be filed no later than November 4, 2013." (Doc. 30, ¶ 5.)

During the protracted interval in which this case had been reactivated but no new pretrial and trial deadlines had been set, the parties apparently resumed discovery.  On June 29, 2016, during this limbo period in which no new scheduling order was in place, SEPH filed the instant Motion for Leave to File Second Amended Complaint.  In particular, SEPH explained that it wishes to amend its pleading for the following purposes: (i) to assert new fraudulent transfer claims against the Braswells relating to Mr. Braswell's transfer of ownership of an annuity to Ms. Braswell in December 2010; (ii) to set forth additional facts alleging that Ms. Braswell had sold the residence and beach condo unit to third parties after Mr. Braswell fraudulently transferred them to her; and (iii) to clarify that SEPH is seeking all relief available under the Alabama Uniform Fraudulent Transfer Act.  (*See* doc. 66, Exh. 1.)

## II.     Analysis.

In briefing the Motion for Leave to Amend, SEPH incorrectly focuses on the liberal amendment standard provided by Rule 15(a)(2), Fed.R.Civ.P., which sets forth the general rule that leave to amend a pleading should be freely given when justice so requires.  SEPH's position is that this case is procedurally akin to *McKinley v. Kaplan*, 177 F.3d 1253 (11th Cir. 1999), in which the Eleventh Circuit applied the Rule 15(a) standard because the parties had proposed scheduling order deadlines, but the district court had never entered a joint scheduling order or otherwise established any binding deadlines in the case, such that the request for leave to amend did not contravene any scheduling order deadline.  *See id.* at 1257 (noting that "the alleged joint scheduling order apparently never was entered and therefore never became binding," and explaining that "[i]n the absence of a dispositive scheduling order, whether leave to amend should be granted is governed by the more liberal standard set forth in Rule 15(a)").  The trouble with SEPH's reliance on *McKinley* is that the Magistrate Judge did enter a Rule 16(b) Scheduling Order in this case, and did establish a deadline for amending pleadings that was binding on the parties.  That deadline expired by its terms on November 4, 2013, almost 32 months before SEPH filed its Motion for Leave to File Second Amended Complaint.  This case is therefore readily distinguishable from *McKinley*.[3]

---

[3]     Nor would it be persuasive for SEPH to contend that the yearlong stay of these proceedings pending resolution of the *Sundance* Case erased the Rule 16(b) Scheduling Order's deadline for amending pleadings (which had, after all, expired eight months before the stay was ever imposed) or gave plaintiff a second bite at the apple following the stay in order to modify its
(Continued)

Where, as here, a party endeavors to amend its pleading after the scheduling order deadline for doing so has passed, the movant may not rely on the relaxed standard of Rule 15(a)(2), but must instead comport with the more stringent standard of Rule 16(b)(4).  *See, e.g., Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b)."); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").[4]  Pursuant to that rule, "[a] schedule may be modified only for good cause and with the judge's consent."  Rule 16(b)(4), Fed.R.Civ.P.  The "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."  *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[5]  The burden of establishing the requisite good cause / diligence rests

---

pleadings and interpose new claims and causes of action against the Braswells.  Recall that the stay was entered not to give SEPH time to investigate new theories of liability or to expand the universe of facts and issues being litigated, but rather to honor the parties' suggestion that developments in the *Sundance* Case might narrow or moot the issues in our case.  Accordingly, any attempt by SEPH to parlay the stay from July 2014 to August 2015 into a new window of time to amend the pleadings and thus to be liberated from the preclusive effects of the expired November 2013 deadline prescribed in the original Scheduling Order is unavailing.

[4]   The rationale for requiring a heightened showing to amend the pleadings after the scheduling order deadline lapses is as follows: "[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded ….  Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier."  *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *1 n.3 (S.D. Ala. June 22, 2012) (citation omitted); *see also Baker v. U.S. Marshal Service*, 2014 WL 2534927, *2 (D.N.J. June 5, 2014) ("Extensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and would severely impair the utility of Scheduling Orders.").

[5]   *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *King v. Chubb & Son*, 563 Fed.Appx. 729, 732 (11th Cir. Apr. 22, 2014) ("There can be no good cause where the record shows that the late-filing party lacked diligence in pursuing its claim.") (citation and internal quotation marks omitted).

on SEPH, the party seeking relief from the lapsed deadline in the original Scheduling Order. *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3rd Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence."); *Northstar Marine, Inc. v. Huffman*, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014) ("The burden of establishing good cause / diligence rests squarely on the party seeking relief from the scheduling order.").

SEPH has not even attempted to make a showing of diligence that might satisfy its burden under the Rule 16(b)(4) good cause standard.  To be sure, SEPH indicates that the Braswells concealed the annuity transfer from SEPH at the time of its occurrence in December 2010; nonetheless, plaintiff acknowledges that it obtained information about the annuity transfer by subpoenaing records from nonparty Hartford Investment Management Company early in the lifespan of this litigation. (Doc. 66, ¶¶ 3-4, 7-8.)  This subpoena was apparently issued on or about February 13, 2014. (*See* doc. 70, Exh. A.)  Plaintiff offers no reason why it could not have issued the subject subpoena earlier, particularly given its awareness that the parties had agreed upon a November 4, 2013 deadline for amending pleadings.  The same is true as to SEPH's proposed new factual allegations that Ms. Braswell subsequently sold the residence and beach condo unit to third parties.  In short, SEPH has made no showing that, even with diligence, it could not reasonably have obtained the necessary discovery on which its proposed amendment is predicated prior to the agreed-upon Scheduling Order deadline for amending pleadings. Accordingly, the Motion for Leave to File Second Amended Complaint is properly **denied** pursuant to Rule 16(b)(4).[6]

---

[6] Even if the Rule 16(b) "good cause" standard did not apply, denial of SEPH's Motion would remain appropriate under Rule 15(a)(2)'s liberal standard.  "Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013) (citation omitted). "Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such a denial." *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (citation omitted). "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend" where the amendment would cause prejudice, such as where the "amendment involves new theories of recovery or would require additional discovery." *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) (citations omitted).  The information before the Court is that SEPH received information about the annuity transfer in documents (Continued)

### III.     Conclusion.

For all of the foregoing reasons, SEPH's Motion for Leave to File Second Amended Complaint (doc. 66) is **denied**.

DONE and ORDERED this 27th day of July, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

produced by a third party in response to a subpoena issued in February 2014.  (*See* doc. 66-2.) Yet SEPH did not move to amend its pleading to assert a claim alleging that such annuity transfer was fraudulent until June 2016, nearly two and a half years later.  Allowing SEPH to amend its pleading to assert such a claim now would necessitate discovery into a transaction entirely separate and apart from the real estate transfers that have been the subject of this litigation ever since the Complaint was filed in May 2013.  This constitutes undue delay.

Another circumstance informs the Court's determination of undue delay, as well.  As noted, these proceedings were stayed at the parties' request from July 2014 to August 2015, for the stated purpose of waiting to see if events in another civil action might narrow the issues in the case.  The purpose of the stay was not to afford the parties another bite at the apple for drafting their pleadings, to eradicate court deadlines that had long since expired, to expand the issues, to launch discovery on brand-new topics, and otherwise to enlarge the scope of these proceedings.  Recall that when the July 2014 stay was entered, the discovery cutoff date loomed a mere four weeks away.  This case should have been nearly ready for trial then.  For SEPH to seek to amend its pleadings nearly a year after the stay was lifted, based on information that had been available to it long before the stay was imposed, seeking substantive amendments that would effectively cause the proliferation of these proceedings, branching out in new directions and encompassing new sets of facts, with all of the attendant discovery and litigation obligations that accompany such matters, would be antithetical to the principles that warranted entry of the stay in the first place.  Simply put, now is not an appropriate time for this case to morph into something new, and SEPH engaged in undue delay by waiting until now to seek amendment of its pleading in this manner.