# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0267-WS-N |
| | ) |
| GEORGE S. BRASWELL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendants' Motion to Exclude Expert Witness Testimony (doc. 111). The Motion has been extensively briefed and is now ripe.

This fraudulent transfer action was brought by plaintiff, SE Property Holdings, LLC ("SEPH"), against defendants, George S. Braswell ("Braswell") and Vennie T. Braswell ("Mrs. Braswell"). In particular, SEPH challenges certain transfers of real property made by Braswell to his spouse, Mrs. Braswell, on May 19, 2009. At the time those transfers were made, George Braswell had executed guaranties exceeding $1.1 million on loans made by SEPH's predecessor for certain real estate projects (the "Bama Bayou Loans"), the borrowers had defaulted on those loans, and SEPH's predecessor had commenced legal proceedings against the borrowers, Braswell and other guarantors.

SEPH's Complaint alleged three distinct causes of action against the Braswells under the Alabama Uniform Fraudulent Transfer Act, Ala. Code §§ 8-9A-1 *et seq.* (the "AUFTA"), as well as a common-law claim of civil conspiracy. Two of those AUFTA causes of action were claims of constructive fraudulent transfer, to-wit: (i) Count Two alleged that the subject transfers violated Alabama Code § 8-9A-4(c) because Braswell's remaining assets after the transfers were unreasonably small; and (ii) Count Three alleged that the subject transfers violated Alabama Code § 8-9A-5(a) because Braswell was insolvent at the time of, or as a result of, the subject transfers. To address the "unreasonably small" and insolvency elements of these particular AUFTA claims, each side retained a Certified Public Accountant to serve as an expert witness in

this case, for the purpose of quantifying, analyzing and computing the relative magnitudes of Braswell's assets and liabilities at the time of the challenged real estate transfers. SEPH's duly designated expert is Stacy Cummings, whereas the Braswells' is Mark Pawlowski. On April 11, 2017, one week after the close of briefing on the parties' cross-motions for summary judgment (docs. 98 & 99), defendants filed their Motion to Exclude Expert Witness Testimony, seeking exclusion of Cummings' testimony pursuant to *Daubert* principles on the grounds that her expert report improperly calculated the value of certain contingent liabilities by not applying the probability discount rule. Plaintiff countered that the probability discount rule was inapplicable to the particular liabilities at issue.

On June 7, 2017, after the close of briefing on the Motion to Exclude Expert Witness testimony, the undersigned entered a 33-page Order (doc. 120) adjudicating the parties' cross-motions for summary judgment. Of particular note, the June 7 Order granted summary judgment in favor of SEPH as to both Count Two and Count Three, the constructive fraudulent transfer causes of action. As to Count Two, the Court found as a matter of law that "Braswell's remaining assets were unreasonably small in relationship to the business transactions and financial obligations he had voluntarily incurred and under which he was then laboring." (Doc. 120, at 24.) This conclusion did not rely on any calculations or opinions offered by Cummings.[1] Similarly, with respect to Count Three, the June 7 Order found that Braswell was insolvent, as a matter of law, as a result of the challenged transfers. In reaching that determination, the Court relied entirely on the calculations of the Braswells' expert (Pawlowski), except for one asset and one liability for which Pawlowski's treatment was found to be legally and factually

---

[1] To the contrary, the reasoning set forth in the June 7 Order included the following relevant passage: "As of May 19, 2009, Braswell had committed himself to business ventures whereby he had personally guarantied or otherwise promised to pay more than $8.5 million for which he could reasonably be expected to be held individually accountable at any time. Neither he nor his joint venturers had ever paid any meaningful principal on the $5.6 million Gulf World notes. He had already been sued for the nearly $2 million he owed on the Bama Bayou / Marine [P]ark guaranties. And he was on the hook for nearly $1 million in unpaid principal and interest on the Sundance guaranty. Even under the most generous possible reading of the summary judgment record, Braswell's assets immediately after the transfers topped out at $7.3 million, more than $5.1 million of which was tied up in a speculative, conjectural 'right of contribution' as to which Braswell's ability to collect anything from his co-venturers … was suspect, at best." (*Id.* at 23-24.)

unsupportable. The June 7 Order did not rest on, cite or credit any of Cummings' expert testimony in its analysis of Braswell's solvency, or lack thereof.[2] Thus, the summary judgment rulings that determined the Braswells are liable to SEPH on the constructive fraudulent transfer theories set forth in Counts Two and Three did not hinge on anything that Cummings wrote in her expert report.

In the wake of the June 7 Order, the "unreasonably small" and insolvency issues for which CPA opinions were or might be helpful to the trier of fact have been decided. The only remaining claims for trial are Count One (an AUFTA actual fraudulent transfer claim), under which the critical issue will be whether Braswell engaged in the subject real estate transfers "with actual intent to hinder, delay, or defraud any creditor," Ala. Code § 8-9A-4(a); and Count Four (a common-law conspiracy claim), as to which the key area of dispute at trial is whether Mrs. Braswell planned with Braswell to transfer assets. As to neither of those claims would CPA testimony on the issue of solvency appear necessary. By all appearances, then, given the present

---

[2] Indeed, the Court's analysis on this point started by "accept[ing] all of Pawlowski's (and hence, defendants') calculations at face value … [that] upon completing the transfers Braswell's assets exceeded his liabilities by the sum of $1,216,219." (Doc. 120, at 26.) The June 7 Order went on to explain why Pawlowski's inclusion of a Gulf World right of contribution as an asset on Braswell's balance sheet valued at $5,169,230 was "unsupported by any record facts and [was] entirely speculative and conjectural" because "no reasonable finder of fact could conclude that Braswell possessed any right of contribution from anybody as of May 19, 2009, much less that such a right was fairly valued at $5.169 million for purposes of an AUFTA insolvency analysis." (*Id.* at 29.) "When the value of that asset is backed out, even using Pawlowski's calculations, the sum of Braswell's debts was greater than all of his assets at a fair valuation, as of March 19, 2009," such that he was insolvent. (*Id.* at 30.) Alternatively, the Court explained that the same conclusion would be reached if the "right of contribution" were left intact on Braswell's balance sheet, but a proper entry were made on the liability side of the ledger for Braswell's $1.9 million in guaranty obligations owed to SEPH's predecessor for the Bama Bayou Loans. Pawlowski's calculations failed to account for those guaranty obligations at all, reasoning that they could be ignored because either the debt had been eliminated by an October 2016 state-court order or they should be discounted in some unspecified fashion using some unspecified methodology. The June 7 Order rejected both arguments because "defendants have neither made any showing that Braswell is not liable to SEPH in the *Bama Bayou* Action in the specified amount nor offered any evidentiary or technical basis for performing the 'discounting' that they say should happen." (*Id.* at 31 n.29.) The June 7 Order concluded that "a § 8-9A-5(a) insolvency analysis must account for Braswell's guaranty obligations to SEPH on May 19, 2009, and that doing so leads inexorably to a finding that Braswell was insolvent on that date <u>even if</u> defendants' expert calculations are accepted as true and correct in all other respects (including the aforementioned $5.1 million right of contribution)." (*Id.*)

posture of this action, SEPH will not need to call Stacy Cummings at trial to testify to her expert opinions as to relative valuation of Braswell's assets and liabilities as of May 19, 2009.

As shown by the foregoing analysis, the objected-to portions of Cummings' expert report and opinions have no bearing on the remaining claims for trial. Nor would the Braswells' objections, if deemed meritorious, yield fodder for reconsideration of the summary judgment Order entered on June 7, 2017, because that ruling did not rely on, credit or otherwise turn on Cummings' expert opinions that defendants now challenge. In light of these considerations, the Motion to Exclude Expert Witness Testimony (doc. 111) is **MOOT**.

This action remains set for Final Pretrial Conference on **July 25, 2017** at **10:00 a.m.**, with jury selection to follow on **August 1, 2017**. The parties are **ordered** to file any motions in limine deemed appropriate by no later than **July 20, 2017**. Responses must be filed on or before **July 27, 2017**, at which time the motions in limine will be taken under submission.

DONE and ORDERED this 7th day of July, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE